**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph Eugene BAXTER, Defendant-**
**Appellant.**

**No. 16524.**

United States Court of Appeals
Sixth Circuit.

May 17, 1966.

---

Daniel W. Davies, Newport, Ky., for appellant.

George I. Cline, U. S. Atty., J. T. Frankenberger, Asst. U. S. Atty., Lexington, Ky., for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Defendant was convicted by District Judge Mac Swinford, sitting without a jury, of violating 26 U.S.C. §§ 5222(a) (1) and 5686(a). The first statute prohibits the production or transportation of mash fit for distillation of distilled spirits without appropriate Treasury authorization. The second statute prohibits possession of property which had been used or was intended to be used for producing such illegal spirits. On each count defendant was sentenced to one year, with the terms to be served concurrently.

This appeal presents only one material question: Should a motion to suppress certain physical evidence which was seized without a search warrant have been granted?

The critical facts appear to be these. Appellant was driving on a public highway in Kentucky towing a trailer. A Kentucky state highway officer named Miller noticed the vehicle. It appeared to be having some kind of difficulty, and Miller pulled up to see if he could assist the driver. Defendant's vehicle came to a stop and the officer parked behind it. The driver left the car and walked toward the rear to meet the trooper and told him that he had a flat tire. He asked the officer to get help for him. As the officer got alongside the trailer (he subsequently testified) he detected a strong odor of whiskey mash coming from the trailer.

The trailer was a large, low, rented one, enclosed on four sides, but open on top. It was covered by a tarpaulin. And the officer testified that he could see several large steel drums and parts of furniture on the trailer. When Officer Miller asked defendant what he had on the trailer, the defendant driver replied that he was hauling furniture and calf feed. At the hearing on the motion to suppress evidence, Miller testified as to what happened next:

"Q And tell the court again if you will what conversation you had with respect to calf feed.

"A He maintained it was calf feed and seemed eager to convince me of that.

"Q And did you advise him that you thought it was something else?

"A I showed skepticism at his maintaining that it was calf feed.

"Q And then what happened?

"A And then when I asked him to show me the calf feed, then he threw the tarp back and at that time I could see the contents of the barrels, the barrels, and also see the flake stand in the trailer with the copper coil in it."

Thereupon Officer Miller made not one but two calls—one to get somebody to fix the tire and the other to get a Federal Alcohol Tax Unit officer on the scene.

Officer Miller testified at the hearing on the motion that he never did arrest defendant. In this regard his testimony was:

"Q Had the tire been replaced prior to the time Mr. Reimer arrived?

"A Yes, sir. I would say not more than two to three minutes before that time. Mr. Reimer had already been called.

"Q Did you advise Mr. Baxter that he could not leave the scene?

"A I told him that I would have to detain him a couple of minutes. Mr. Reimer was on the way then.

"Q What was his reaction to that?

"A No reaction."

Reimer, the Alcohol Tax Unit agent testified that he made the arrest shortly after he appeared upon the scene and smelled the whiskey mash and saw the distilling equipment on the trailer.

"The Court: * * * I understood you, Mr. Reimer, to say that you arrested him just as soon as you saw this outfit he had there. You made the arrest then, is that correct?

"Mr. Reimer: Yes, sir. Just a few minutes after I arrived, I detected the odor of the whiskey mash and, of course, I saw the distilling equipment on the trailer.

"The Court: Could you see whether or not the things you saw there were utilities that were used commonly in the manufacture of moonshine whiskey in the locality?

"Mr. Reimer: Yes, sir, that's right."

Reimer also told defendant that he was arresting him for violation of the Internal Revenue laws.

On appeal appellant contends that the motion to suppress should have been granted because the arrest was unlawful. He contends in this regard that there was no probable cause for any search or seizure or for Miller's "detention" or Reimer's arrest, and that the arrest was made in violation of Ky.Rev.Stat. Title XL § 431.025(1) (1962), providing that an arresting officer shall tell the person "of the offense for which he is being arrested."

This case was submitted by stipulation on the testimony heard in open court by the United States District Judge on motion to suppress, plus a stipulation entered on the court record at that time. The stipulation read: "There was taken from the defendant at the time and place set forth in the indictment a quantity of mash fit for distillation."

The defendant did not take the stand either at the hearing on the motion or when the case was called for trial. The evidence for the prosecution was largely undisputed.

The trial judge found as follows:

"The Court: I think the evidence in this case will show that he had this distilling apparatus and this mash fit for distillation there at that time and place and without making any further comment, I would have to hold in view of the fact that I overruled the motion to suppress the evidence, that he was guilty of the offense charged both in the first count and in the second count of this indictment and that will be the judgment of the Court, that his guilt is established to the exclusion of a reasonable doubt, that he did on or about the 3rd day of March 1964, in this Eastern District of Kentucky, make and ferment 60 gallons of mash fit for distillation, as charged in the first count of this indictment, that he did have in his possession the property set forth in the second count of the indictment, and is guilty on both counts of the indictment."

If the District Judge's denial of the motion to suppress evidence was correct, there is no question but that the record supports the conviction.

 It appears to this court that the arrest was actually made by Officer Miller when he detained Baxter for the several minutes before Reimer's arrival. The government concedes that this was an arrest. Further, this was clearly a deprivation of liberty under the authority of law. It does not take formal words of arrest or booking at a police station to complete an arrest. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Long v. Ansell, 63 App.D.C. 68, 69 F.2d 386 (1934), aff'd, 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208 (1934); Coleman v. United States, 111 U.S.App.D.C. 210, 295 F.2d 555 (1961) cert. denied, 369 U.S. 813, 82 S.

Ct. 689, 7 L.Ed.2d 613 (1962); cf. (dictum), United States v. Vita, 294 F.2d 524, 529–530 (C.A.2, 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962).

In *Henry* the United States Supreme Court said this about the question as to when an arrest occurred:

"When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband was discovered is not enough. An arrest is not justified by what the subsequent search discloses, as Johnson v. United States [333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436], supra, holds." Henry v. United States, supra, 361 U.S. at 103, 80 S. Ct. at 171.

■ It also appears to us that Officer Miller had legal probable cause to make a search and an arrest prior to any act by him which might be argued as constituting either. He had detected a strong odor of whiskey mash. The odor of whiskey mash was emanating from the trailer. He could see the barrels on the trailer. In the quoted colloquy he had received an unsatisfactory explanation for the barrels and the odor in defendant's statement about calf feed. He had previously had experience in moonshine arrests and testified that he knew the odor of whiskey mash. We believe these facts alone represented probable cause for Miller to believe that the trailer carried contraband and that a felony was being committed in his presence. United States v. Haley, 321 F.2d 956 (C.A.6, 1963); Hershkowitz v. United States, 65 F.2d 920 (C.A.6, 1933).

■ The general rule pertaining to search of automobiles or other vehicles is as follows:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile *or other vehicle* contains that which by law is subject to seizure and destruction, the search and seizure are valid. * * *" (Emphasis added) Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925).

Appellant relies upon a case where the United States Supreme Court held unconstitutional a search of a dwelling place where the search was without a warrant and was not an incident of a lawful arrest. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). See also Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ Historically, however, it is clear that a different standard has been applied to the facts authorizing search of a vehicle without a warrant than to those held to authorize search of a dwelling. Carroll v. United States, supra; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L. Ed. 629 (1931).

One basic distinction pertains to circumstances (clearly present in the instant case!) "where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Carroll v. United States, supra, 267 U.S. at 153, 45 S.Ct. at 285.

■ It is the view of this court that the constitutional reasonableness or unreasonableness of a search or seizure should be related not only to the circumstances which occasion the arrest or search (probable cause), but also to the purpose and extent of the interference with liberty represented by the arrest or search. See Agnello v. United States, supra; United States v. Lefkowitz, 285

U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

Here Miller, having probable cause to search the vehicle and to arrest defendant, did not use words of arrest and did not act to seize the contraband. He asked to see the calf feed, and, when even more specific proof was uncovered, he called a federal officer more experienced than he in liquor law violations.

The fact that Miller's approach to the problem he faced was more careful than we believe was constitutionally required represents no argument for holding this search and arrest to be illegal.

■ We find no constitutional "unreasonableness" in any acts of these two officers which required the District Judge to strike the evidence which was seized.

■ As to the second question posed by this case, Officer Miller did not specifically tell Baxter the occasion for his detention or arrest. Under the statute [1] relied on by appellant, however, this did not render Miller's "detention" of defendant unlawful. Under all of the circumstances of this case, the defendant obviously knew what the occasion for the "detention" was. Kentucky holds that the police statement need not be made when the party arrested obviously knows the answer. Dale v. Commonwealth, 186 Ky. 510, 217 S.W. 363 (1920); Sizemore v. Commonwealth, 279 Ky. 190, 130 S.W. 2d 31 (1939); Nickell v. Commonwealth, 285 S.W.2d 495 (Ky.1955); United States v. McGavic, 337 F.2d 317, 321 (C.A.6, 1964), cert. denied, 380 U.S. 933, 85 S.Ct. 940, 13 L.Ed.2d 821 (1965). Further, the testimony indicates that within minutes (and at the time he was formally arrested), Reimer told him that he was being arrested for violation of the Internal Revenue laws.

It appears that several violations of Baxter's rights may have occurred after the search of the trailer and the arrest. Baxter, after being placed in jail, was denied the use of a telephone in violation of Kentucky law. His house was searched, apparently without a warrant. He was not taken before a Federal Commissioner until three o'clock the following afternoon.

None of these issues are, however, relevant to this proceeding. No appellate issues are presented to us concerning them, presumably since no confession or incriminating statement or evidence resulting from them was received in evidence.

We find no reversible error.

Affirmed.

---

1. Kentucky Rev.Stat. Title XL § 431.025(1) (1962).