Kevin Michael POE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–CA–000747–DG.

Court of Appeals of Kentucky.

July 22, 2005.

Kenneth R. Haggard, Hopkinsville, KY, for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for Appellee.

Before BARBER and SCHRODER, Judges; HUDDLESTON, Senior Judge.[1]

*OPINION*

BARBER, Judge.

Kevin Michael Poe (Poe) entered a conditional guilty plea on September 25, 2003 to the offenses of driving under the influence, first offense, and possession of marijuana after the district court denied his motion to suppress evidence seized as a result of, what Poe argues, was an illegal stop. The circuit court affirmed the district court's ruling and Poe's request for discretionary review by this Court was granted on June 14, 2004. We reverse.

On December 21, 2002 an officer with the Hopkinsville Police Department observed Poe driving up and down the same streets around 1:30 a.m. The citation notes a "courtesy stop was made to possibly offer directions." The officer effected the stop by pulling behind Poe and activating his emergency lights. Once the stop was made the officer noticed Poe had bloodshot eyes, a carefree attitude, and was not wearing a seatbelt. Poe admitted upon questioning that he had been smoking marijuana. Poe was arrested and charged with operating a motor vehicle while under the influence of drugs, no insurance, possession of marijuana, and possession of drug paraphernalia, first offense.

Poe filed a motion to suppress all evidence based on the allegation that the officer did not have a reasonable and articulable suspicion upon which to believe any criminal activity was afoot, thus, the stop did not meet the constitutional standards required by *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

On January 23, 2003 the district court held a suppression hearing on Poe's motion. At the hearing the officer testified regarding the stop he made of Poe as follows:

Haggard: [Poe's attorney] The basis for pulling him [Poe] over was that as a courtesy?

[Officer] Marszalek: Yes, sir.

Haggard: Okay. There was no criminal activity that you saw being committed was there?

Marszalek: No, sir.

Haggard: You basically just assumed he might be lost and so you pulled him over.

Marszalek: Correct.

Haggard: As we stand here, you can't articulate any criminal activity that you thought was being committed?

Marszalek: No, sir.

* * *

Adams: [Prosecutor] Is there or was there any other basis for this stop?

Marszalek: Other than the courtesy stop I figured the subject was lost. He was observed driving numerous times around Mechanic's Street, up and down Howell, Hayes, and Younglove. It is a very high drug activity area. I noticed Mr. Poe driving, no-

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

ticed him driving without a seatbelt. Each time I passed him by Mr. Poe had pretty much been smiling and then I got him stopped. I didn't know if something was wrong or he was lost or he was looking for something. I made the stop to offer assistance. . . .

Officer Marszalek acknowledged that he activated his emergency lights to pull Poe over and he admitted he did not cite Poe for failing to wear a seatbelt although he gave him a verbal warning. In his testimony the officer insisted he had observed Poe's failure to wear a seatbelt prior to pulling him over but admitted he did not stop Poe for this reason.

The district court made the following factual finding, "I think what we've got here is the intent for him to stop was not based upon criminal activity. It was, as you indicated, a courtesy stop." The district court then ruled that once Poe was stopped Officer Marszalek could, upon the observation of circumstances leading to a reasonable belief of criminal activity, investigate further and take appropriate measures. Thus, Poe's motion to suppress was denied. Poe subsequently entered a conditional guilty plea as noted above and appealed the district court's ruling on the motion to suppress to circuit court.

The circuit court affirmed the district court's ruling expressly relying on *United States v. Baxter,* 361 F.2d 116 (6th Cir. 1966) *cert. den. Baxter v. U.S.,* 385 U.S. 834, 87 S.Ct. 79, 17 L.Ed.2d 69 (1966). In *Baxter* an officer stopped a vehicle with a trailer that appeared to be having difficulty. Once stopped, Baxter exited the vehicle, told the officer he had a flat tire, and requested the officer's assistance. When the officer approached the side of Baxter's trailer he noticed a strong smell of whisky mash. *Id.* at 117. The Sixth Circuit Court of Appeals held the subsequent search of the trailer and arrest of Baxter to be constitutionally sound. *Id.* at 120.

Poe's petition for discretionary review was granted by this Court and in his argument for reversal of the lower courts' decisions Poe continues to assert there was no reasonable and articulable suspicion of criminal activity, thus, no basis for him to be stopped.

The Commonwealth does not dispute Poe's argument; in fact, it admits in its response to Poe's petition for discretionary review that, "there is no question of fact or law surrounding the lack of criminal activity as a basis for the stop in this case." Instead, the Commonwealth relies on the "community caretaking function" of police officers endorsed by *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), to justify the stop of Poe in this case.

■ The standard of review on a motion to suppress is a two step process that requires an appellate court to review the trial court's findings of fact under a clearly erroneous standard and its conclusions of law *de novo. Welch v. Commonwealth,* 149 S.W.3d 407, 409 (Ky.2004).

The Commonwealth admits that the stop of Poe was not based on any reasonable and articulable suspicion of criminal activity and the circuit court's ruling also recognizes that the stop of Poe was not based on this principle, thus, it cannot be justified pursuant to the doctrines expressed in *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) and *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *See also, Simpson v. Commonwealth,* 834 S.W.2d 686, 687 (Ky.App.1992). Essentially the Commonwealth is admitting the stop of Poe was illegal unless the community caretaking function exception applies.

Thus, we are presented only with the narrow question of whether Officer Marszalek's stop of Poe qualifies under the community caretaking function.

The community caretaking function was first articulated by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The Court explained the idea in the context of a case where the police had searched a vehicle without a warrant that had been removed from an accident scene. The search occurred later in time from the accident and was made to locate the driver's, who was a Chicago police officer, service revolver. *Id.* 413 U.S. at 437, 93 S.Ct. at 2526. The Court found the search not to violate Constitutional principles stating:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* 413 U.S. at 441, 93 S.Ct. at 2528.

Since *Cady v. Dombrowski, supra* was decided, courts across the country have considered the community caretaking function and whether it applies in a variety of situations. Most jurisdictions have adopted the doctrine in some form although a few have declined to consider it where the facts presented did not rise to a level sufficient to show that a vehicle's operator required police assistance. *Rowe v. State*, 363 Md. 424, 445, 769 A.2d 879, 891 (2001); *Barrett v. Commonwealth*, 250 Va. 243, 248, 462 S.E.2d 109, 112 (1995).

The *Rowe* and *Barrett* courts viewed the doctrine applied in the context of one needing police assistance as an extension of the United States Supreme Court's holdings since *Cady* and its progeny only considered the community caretaking function of police officers where an inventory search of property properly in custody was conducted without a warrant. *Rowe, supra* 363 Md. at 444, 769 A.2d at 890–891 (quoting *Barrett, supra* 250 Va. at 246–248, 462 S.E.2d at 111–112).

Most other courts that have had occasion to determine whether the community caretaking function of police officers applies in a given situation have required the officer's stop to be based on specific and articulable facts that lead to a reasonable conclusion that the individual requires assistance or is necessary for the public's safety. *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991). *See also, Crauthers v. State*, 727 P.2d 9, 11 (Alaska App. 1986)(observation of facts and circumstances that lead to reasonable conclusion driver is requesting assistance); *State v. Harrison*, 111 Ariz. 508, 509, 533 P.2d 1143, 1145 (stopped because tire "bouncing" off the road); *State v. Clayton*, 113 Idaho 817, 818, 748 P.2d 401, 402 (1988)(approached because vehicle in parking lot with engine and lights on in the early morning while operator's head was slumped forward); *State v. Moore*, 609 N.W.2d 502, 503 (Iowa 2000)(stopped by Park Ranger to tell driver to slow down in park because of number of people in proximity to road at the time); *State v.*

*Pinkham,* 565 A.2d 318, 319 (Maine 1989)(safety reasons alone may be sufficient to justify stop if based on specific articulable facts); *Commonwealth v. Evans,* 436 Mass. 369, 373, 764 N.E.2d 841, 844 (2002)(approaching vehicle in breakdown lane to check on status of vehicle and occupants permissible under community caretaking function).

There have been no published cases in Kentucky considering the application of the community caretaking function to a stop made by a police officer. *Cady v. Dombrowski, supra* has only been cited and relied on twice: once in *City of Danville v. Dawson,* 528 S.W.2d 687 (Ky.1975) which has since been reversed by *Estep v. Commonwealth,* 663 S.W.2d 213 (Ky.1983). And the other Kentucky case citing to *Cady v. Dombrowski, supra* is *Blankenship v. Commonwealth,* 740 S.W.2d 164 (Ky.App.1987). *Blankenship* held that an officer's search of a vehicle of a person who had been shot and was unconscious in order to seek his identity was proper. *Id.* at 166. In the process the officer found incriminating evidence in plain view—the Court held the evidence admissible. *Id.*

The circumstances in these cases are dissimilar from the facts here. In Poe's case the issue is not whether an inventory search meets the constitutional standard, but whether the stop itself qualifies under the community caretaking function.

All courts that have considered the community caretaking function have required, at a minimum, that the officer's actions must be measured by a standard of reasonableness. One court described this determination as "balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen." *State v. Ellenbecker,* 159 Wis.2d 91, 96, 464 N.W.2d 427, 429 (Wis.App.1990), *rev. den.,* 468 N.W.2d 28 (Wis.1991).

*Ellenbecker* applied this test in the context of a police officer requesting the license of an operator of a disabled vehicle. *Id.* 159 Wis.2d at 96–97, 464 N.W.2d at 429. But its principle is equally applicable to Poe's case because when Officer Marszalek stopped Poe using his emergency lights he effectively seized him. That is, any reasonable person in Poe's situation would not have felt free to walk, or drive, away. *Terry v. Ohio, supra* 392 U.S. at 16, 88 S.Ct. at 1877. *See also, State v. Jestice,* 861 A.2d 1060, 1062 (Vt.2004)(stop is a shorthand way of referring to a seizure).

The question is was Officer Marszalek's stop of Poe reasonable in the circumstances. We hold it was not. The public need in this case is slight. People commonly become lost, if in fact Officer Marszalek's assumption about Poe's driving was correct. Police officers do not normally pull someone over because they believe the operator of the vehicle needs directions. The intrusion on the privacy of the citizen, however, is great. The ordinary citizen would not expect a police officer to activate his emergency lights and effect a stop with which the citizen must comply without the stop being supported by some sort of traffic violation or criminal activity. Poe, of course, was free to stop the officer and ask directions. If he had initiated the stop, we would have a different situation.

As others have noted, for the community caretaking function to apply there must be some specific and articulable facts that would lead the officer to reasonably believe the citizen is in need of assistance. *Jestice, supra* 861 A.2d at 1064. An officer's practice cannot provide reasonable grounds. *Id.* In this respect we agree with the observation that:

An officer's subjective explanation for stopping or detaining a driver does not control Fourth Amendment analysis. Courts are required to "make an objective assessment of the officer's actions" when determining if a stop was reasonable.

*State v. Rinehart,* 617 N.W.2d 842, 845 (S.D.2000)(Sabers, J. dissenting)(quoting *United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990)(citing *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177 (1978))).

Such an objective assessment must also be applied in the context of an argument for the community caretaking function, otherwise, the protections afforded by the Fourth Amendment would quickly be eroded. Court approval of any reason related to "public need" for stopping and detaining a citizen based on the subjective beliefs of police officers is constitutionally insufficient.

In this case the district court found as a fact that Poe was stopped as a courtesy. That is, to possibly offer directions. After reviewing the testimony and arguments of the suppression hearing it cannot be held that this finding is clearly erroneous. Officer Marszalek himself stated he stopped Poe because he thought he might be lost.[2]

But the legal conclusion drawn by the district court and upheld by the circuit court cannot stand.[3] Officer Marszalek's belief that Poe may need directions is not a valid basis to stop him in these circumstances. Officer Marszalek observed no traffic violations, no criminal activity, and no evidence such as a flat tire, flashing lights, jumper cables, a raised hood or any other indication that Poe required assistance. The community caretaking function does not provide justification for the stop in this case. Whether it would provide justification in other circumstances we leave for another day.

The decision of the circuit court is reversed and the case is remanded for proceedings consistent with this opinion.

ALL CONCUR.

---

**2.** The fact that Officer Marszalek also testified Poe was not wearing his seatbelt cannot provide an independent grounds to support the stop in this case because Officer Marszalek admitted he did not stop Poe for this reason nor write a citation for the violation. Further, the district court found as a fact that the stop was made as a courtesy and the Commonwealth asserts the justification for the stop is based on community caretaking functions, not on law enforcement.

**3.** *United States v. Baxter,* 361 F.2d 116 (6th Cir.1966) *cert. den. Baxter v. U.S.,* 385 U.S. 834, 87 S.Ct. 79, 17 L.Ed.2d 69 (1966), relied on by the circuit court here, is simply not applicable. *Baxter* concerned the constitutionality of a search, not the legality of a stop.