RENDERED: FEBRUARY 15, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000346-DG    DATE 3/8/18 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY                                APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.        CASE NOS. 2014-CA-001119-MR AND 2014-CA-001120-MR
    MUHLENBERG CIRCUIT COURT NOS. 14-CR-00025 AND 14-CR-00026


DONNA MARIE BLAKE                                        APPELLEE


**OPINION OF THE COURT BY JUSTICE VANMETER**

**REVERSING**

Donna Marie Blake entered a conditional guilty plea to two counts of

first-degree trafficking in a controlled substance, and one count of being a

persistent felony offender ("PFO-2"), and received a seven-year sentence. Her

guilty plea was conditioned on her right to appeal the Muhlenberg Circuit

Court's denial of her motion to suppress evidence seized from her vehicle

during a traffic stop. On appeal, the Court of Appeals reversed, holding that

suppression was required in this case. This Court granted discretionary review

and for the following reasons, reverses the Court of Appeals.

## I. BACKGROUND.

The facts in this case are not in dispute, only the lower courts'

application of the law. In 2014, Detective Wade Shoemaker, a member of

Kentucky State Police's Drug Task Force, was investigating a suspected drug operation in Muhlenberg County. On January 22, 2014, Det. Shoemaker equipped a confidential informant ("CI") with audio and video devices and sent him to a suspected drug dealer's home to make a controlled buy. Det. Shoemaker and another officer watched as the CI went into the house. A short time later, a red Hyundai operated by a white female parked on the street in front of the home. The officers observed the suspected drug dealer exit his house, approach the Hyundai, stand there for a few minutes, then go back into his house.

As the Hyundai pulled away, Det. Shoemaker called the central dispatch center and provided the vehicle's license plate number. He learned that the Hyundai belonged to Blake, with whom he was already familiar as she had been rumored to have been involved in drug trafficking. Det. Shoemaker met with the CI immediately after the controlled buy, who informed him that the suspected drug dealer had sold him two hydromorphone pills, which he had obtained from Blake.

Det. Shoemaker set up another controlled buy from the same dealer using that same CI about a week later. Prior to this controlled buy, Det. Shoemaker contacted Central City Police Sergeant James Jenkins, briefed him on the narcotics investigation, and requested that he make a traffic stop on Blake's Hyundai if it became involved in the second controlled buy. Sgt. Jenkins knew of Blake, and was aware of her rumored involvement in the local drug trade.

On January 28, 2014, the CI was again outfitted with recording equipment and sent into the dealer's home. Once again, while the CI was inside, the red Hyundai arrived and parked in front of the house. The dealer walked outside, briefly met with the driver, then went back inside. This time, Det. Shoemaker could not see the Hyundai's license plate, but believed the vehicle to be Blake's. A short time after the Hyundai pulled away, the CI texted Det. Shoemaker that he was leaving the house. Det. Shoemaker called Sgt. Jenkins, who was on duty at the time, and told him that the controlled buy had been completed, and asked him to make a stop on the Hyundai for a traffic violation if the operator committed one.

Sgt. Jenkins located Blake's Hyundai at 5:15 p.m., as the sun began to set. He noticed Blake's vehicle's license plate was not illuminated, so he pulled her over for a traffic violation. Sgt. Jenkins approached the vehicle and recognized the driver as Blake. He told her he stopped her due to the license plate issue and asked if he could search her car. Blake immediately consented; Sgt. Jenkins found approximately $10,000 in cash in Blake's purse and methamphetamine in the glove compartment and decided to arrest her. Det. Shoemaker joined him at the scene and identified a portion of the money as that used by his CI in the controlled buy.

A Muhlenberg County grand jury indicted Blake in two separate cases. In the first, she was charged with first-degree trafficking meth, first-degree trafficking opiates, and being a PFO-2. In the second case, she was charged with first-degree trafficking opiates and being a PFO-2. Prior to trial, Blake

3

moved to suppress the evidence seized during the search of her vehicle. She argued that Sgt. Jenkins's traffic stop was improper because the law requiring license plate illumination did not require the light to be on until one-half hour after sunset. Because the sun set at 5:08 p.m. on January 28, 2014, Blake maintained that she was not required to have her license plate illuminated when Sgt. Jenkins pulled her over at 5:16 p.m.[1] In response to Blake's suppression motion, the Commonwealth acknowledged that the license plate violation might not have been a proper basis for the stop; nonetheless, Det. Shoemaker had reasonable suspicion of Blake's participation in the controlled drug buys and his reasonable suspicion transferred to Sgt. Jenkins so as to justify the traffic stop.

At the suppression hearing, Det. Shoemaker testified that he wanted Sgt. Jenkins to make a stop for a traffic violation and establish his own probable cause for stopping the Hyundai in order to protect the CI's confidential identity and because he suspected, but was not sure, that Blake was the dealer's supplier. Sgt. Jenkins testified that the only reason he stopped Blake was the failure to illuminate her license plate.

---

[1] Sgt. Jenkins cited Blake for violation of Kentucky Revised Statutes (KRS) 186.170(1), which provides, in part: "Plates shall be kept legible at all times and the rear plate shall be illuminated when being operated during the hours designated in KRS 189.030." Further, KRS 189.030 states, in part: "(1) Headlamps, when required on a vehicle, shall be illuminated: (a) During the period from one-half (1/2) hour after sunset to one-half (1/2) hour before sunrise; and (b) At such times as atmospheric conditions render visibility as low as or lower than ordinarily the case during that period."

Following the suppression hearing, the trial court issued an order finding that no traffic violation had occurred: it took judicial notice that on January 28, 2014, sunset was at 5:08 p.m.; thus, Blake was not required to have her headlights illuminated until 5:38 p.m. Therefore, at the time of the traffic stop, 5:16 p.m., Blake was not committing a traffic violation. However, the trial court found that Sgt. Jenkins had reasonable suspicion to pull over Blake's vehicle, based on the information relayed to him by Det. Shoemaker, and based on the reasonable suspicion Det. Shoemaker had that Blake was involved in an illegal drug transaction. The trial court noted that the subjective motivations of Sgt. Jenkins that led to the stop of Blake's vehicle were irrelevant; Sgt. Jenkins need not have had personal knowledge of the events that occurred at the suspected drug dealer's home to justify stopping Blake's vehicle; the facts and circumstances surrounding the stop indicated the existence of a reasonable and articulable suspicion that Blake was involved in illegal drug trafficking. The trial court further noted that the fact that Sgt. Jenkins had initiated the stop was no more (or less) intrusive on Blake's Fourth Amendment rights than had Det. Shoemaker conducted the stop himself, in accordance with the collective knowledge doctrine. Accordingly, the trial court denied Blake's motion to suppress.

A divided Court of Appeals panel reversed, in a not to be published opinion, reasoning that while reasonable suspicion can be transferred from one officer to another in proper circumstances, because Sgt. Jenkins did not actually rely on Det. Shoemaker's information and instead made the stop based

solely on the license plate violation, the collective knowledge doctrine was irrelevant. Because Blake had not committed a traffic violation, the appellate court found no reasonable suspicion justifying the stop and accordingly reversed Blake's convictions. This Court granted discretionary review.

## II. ANALYSIS.

In reviewing a trial court's findings of fact on a motion to suppress, we assess whether the factual findings are supported by substantial evidence and not clearly erroneous. *Lamb v. Commonwealth*, 510 S.W.3d 316, 322 (Ky. 2017). We then conduct a *de novo* review of the trial court's application of the law to the facts. *Id.* Here, since neither party challenges the trial court's factual findings, we will proceed to reviewing its application of the law.

Under the *Terry*[2] doctrine, law enforcement officers may make a warrantless stop of a person or an automobile "where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity." *United States v. Hurst*, 228 F.3d 751, 756–57 (6th Cir. 2000); *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). Reasonable suspicion is determined by the totality of the circumstances. *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). And in determining whether reasonable suspicion exists, the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration. *United States v. Williams*, 650 F.Supp.2d 633, 653 (W.D.Ky.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

6

2009); *see also United States v. Miramonted,* 365 F.3d 902, 905 (10th Cir. 2004) ("probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest[]").

Relying on *United States v. Hensley,* 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985), the trial court found that Sgt. Jenkins had reasonable suspicion to make the stop and thus the evidence seized need not be suppressed. In *Hensley,* the Supreme Court held that the investigatory stop of the defendant's vehicle in reliance on another police department's "wanted flyer," which was issued on basis of articulable facts supporting a reasonable suspicion that the person wanted had committed an offense, was constitutionally reasonable where the stop and detention that occurred were no more intrusive than would have been permitted by the issuing department. *Id.* at 222, 105 S. Ct. at 685. "Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop[.]" *Id.* at 233, 105 S. Ct. at 682. The trial court concluded that Det. Shoemaker's reasonable suspicion to stop Blake's vehicle transferred to Sgt. Jenkins and justified the stop.

The Court of Appeals reversed the trial court based on the following reasoning:

> While we agree that reasonable suspicion can be transferred between officers in appropriate circumstances, *see, e.g., Tucker v. Commonwealth,* 199 S.W.3d 754 (Ky. App. 2006), we disagree that it can justify Sgt. Jenkins's stop where Sgt. Jenkins

7

specifically testified that although he was told that Det. Shoemaker suspected Blake was involved with narcotics, he did not stop Blake for that reason. Because Sgt. Jenkins did not rely on Det. Shoemaker's information in determining to stop Blake, Det. Shoemaker's suspicions are irrelevant to our analysis. *See Poe v. Commonwealth*, 169 S.W.3d 54, 59 n.2 (Ky. App. 2005) (where an officer testified he stopped a driver because he thought the driver might be lost, his observation and testimony that the driver was not wearing his seatbelt could not provide an independent ground to support the stop where the officer admitted he did not stop the driver for this reason). Therefore, because Sgt. Jenkins's justification for the stop was entirely dependent upon whether Blake committed a traffic violation and no traffic violation took place, the evidence seized after Blake consented to a search following an improper stop must be suppressed.

*Blake v. Commonwealth*, Nos. 2014-CA-001119-MR and 2014-CA-001120-MR, slip op. at 7 (Ky. App. June 3, 2016).

However, this Court has held:

Subjective intentions do not play a role in either a probable cause or a reasonable suspicion analysis under the Fourth Amendment. The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.

*Lamb*, 510 S.W.3d at 322 (internal quotations and citations omitted). In *Lamb*, we rejected the appellant's argument "insofar as it is premised upon some defect in the officer's subjective intentions; at all stages of the stop the officer's actions were objectively reasonable." *Id.* at 323.

Further, the Court of Appeals' reliance on *Poe* was misplaced. No officer in *Poe* had reasonable suspicion to stop the vehicle; rather, a police officer

8

made a "courtesy stop" to offer directions to the driver of the car. *Poe*, 169 S.W.3d at 55. Once the stop was made, the officer noticed Poe had bloodshot eyes, a carefree attitude, and was not wearing a seatbelt. *Id.* Poe admitted upon questioning that he had been smoking marijuana. *Id.*

By contrast, Det. Shoemaker had reasonable suspicion to stop Blake's vehicle and that reasonable suspicion was imputed to Sgt. Jenkins under the collective knowledge doctrine. Despite Sgt. Jenkins's testimony that he only stopped Blake's vehicle because of an alleged license plate violation, the record reflects that the real reason Det. Jenkins pulled over Blake's vehicle was upon Det. Shoemaker's request and because Det. Shoemaker believed Blake was involved in the drug trafficking operation under investigation. Based upon the totality of the circumstances, Det. Shoemaker had reasonable suspicion to make the investigatory stop. Suppression of the evidence seized from Blake's vehicle was not required, and the Court of Appeals erred by holding otherwise.

### III.  CONCLUSION.

The Court of Appeals' Opinion is reversed, and the Judgment and Final Sentencing of the Muhlenberg Circuit Court is reinstated.

All sitting. All concur.

9

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General


COUNSEL FOR APPELLEE:

Ryan Driskill