RENDERED:  JULY 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0845-MR

DEPORRES R. THOMPSON                                                   APPELLANT


APPEAL FROM MARION CIRCUIT COURT
v.          HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 19-CR-00174


COMMONWEALTH OF KENTUCKY                                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, KRAMER, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Deporres R. Thompson has appealed from his conviction by

the Marion Circuit Court for first-degree possession of a controlled substance

(methamphetamine and cocaine) and for tampering with physical evidence.

Thompson entered a guilty plea conditioned upon his right to appeal the circuit

court's ruling on his motion to suppress evidence seized from his vehicle.  Finding

no error or abuse of discretion, we affirm.

In September 2019, the Marion County grand jury returned a 10-count indictment against Thompson, charging him with several drug-related and driving offenses as well as for being a first-degree persistent felony offender. The indictment specifically charged that he had been in possession of a firearm while trafficking in various controlled substances.[1] The charges arose from events that took place in the early hours of June 23, 2019, on Fairgrounds Road in Lebanon, Kentucky, and were detailed in the uniform citation completed by Officer Samuel Knopp of the Lebanon Police Department:

> On 6-23-19 at 0139 hrs subject was observed traveling on Fairgrounds continuously starting and stopping in the roadway. Subject pulled off and stopped in a lot before I could initiate my lights. As I approached the driver there was a strong odor of marijuana exiting from inside the vehicle. Driver who was identified as Deporres Thompson had red bloodshot eyes and slow sluggish speech. Thompson appeared drowsy and could not carry on or comprehend a conversation. Thompson advised that he is paralyzed from the stomach down. Due to his physical impairment the only field sobriety conducted was Lack of Convergence where subject showed signs of impairment. Right eye would not go to the center. Subjects information was [run] through dispatch where they advised that his operator license [was] suspended. Upon opening the driver door to place Thompson under arrest there was a prescription bottle prescribed to Thompson visible in the driver door. The bottle had a white powder residue inside. Located inside the ashtray was another prescription bottle prescribed to Thompson that also had a white powder inside that was field tested

---

[1] Firearms were located in the passenger side door pocket near Thompson's girlfriend, Ashley Yates, and in the left front pocket of the center rear passenger, Keion Wright.

-2-

and showed positive for cocaine. Located between the driver seat and center console was a black zipper bag containing a large amount of cash. EMS was contacted to transport Thompson to Springview Hospital for blood test and medical clearance. Once at the hospital Implied Consent was read. When asked to contact an attorney above advised "this is bullshit and he wasn't taking any test," and did not contact an attorney. Thompson refused. While waiting to be medically cleared, Thompson asked to contact an attorney. Phonebook and phone were provided. Thompson contacted his girlfriend instead. Once cleared from the hospital, hospital staff Jeremy Hunt assisted in loading Thompson into the cruiser. When getting Thompson into the cruiser his pants slid down and two large baggies fell onto the ground near the rear door. One bag was a large bag of suspected marijuana. The other bag contained a small bag of suspected marijuana, a bag of suspected crack cocaine, a bag of suspected powder cocaine, a bag of suspected methamphetamine and a bag containing numerous pills of different shapes and colors. Due to the large amount of cash and individual bags of assorted drugs, it is commonly known that drugs are being sold for profit. During the whole incident there was a strong odor of marijuana coming from Thompson's person.

Thompson retained counsel and entered a plea of not guilty at his arraignment.

In December 2019, Thompson moved to suppress the evidence seized from his vehicle due to lack of reasonable suspicion of the officer. The court scheduled a suppression hearing for later that month.

The court held the suppression hearing on December 23, 2019. Officer Knopp testified for the Commonwealth. He was patrolling the Fairground Road area in the early morning hours of June 23, 2019. He came up behind a truck

stopped in the middle of the roadway with its brake lights on that was starting and stopping in the roadway. After it stopped a couple of times, the truck pulled into a driveway. Officer Knopp rode past the truck, then turned around to go the other direction to check on it. The truck had pulled out from the driveway and was going in the other direction; it continued to stop and start in the roadway until it pulled off into an open gravel lot. After the truck had stopped in the lot, Officer Knopp pulled up next to it and got out. He activated his emergency equipment because he thought the back end of his vehicle was too close to, and was sticking out into, the roadway. He wanted to alert oncoming traffic. Officer Knopp admitted that he intended to activate his lights before the truck pulled into the gravel lot; it had stopped before he had the opportunity to do so.

Officer Knopp went on to describe his observations and his interaction with the people in the truck. As he approached the truck, Officer Knopp smelled the odor of marijuana coming from the truck. He asked the driver for his license and insurance, and he noticed the driver had red bloodshot eyes, sluggish speech, and was extremely slow. He told individuals in the truck that he had stopped it because he saw the truck starting and stopping in the roadway. He said they told

him they understood why he would do that and that this exchange appeared on his body camera.[2]

On cross-examination, Officer Knopp agreed that he had completed a citation that night based upon this incident and a police report later; he included everything in his police report that occurred that night. He did not recall seeing any other vehicles or pedestrians on Fairgrounds Road, and the truck was not speeding. He agreed that stopping in the street momentarily was not a traffic offense, but he described the multiple stops and starts as suspicious driving. Officer Knopp said he thought the driver might be impaired because the truck was starting and stopping multiple times, but there was not a good place to activate his lights and stop when the truck pulled into the first driveway area. He also said the driver might be lost, and he was trying to run the license plate. It was his intent to see if the driver was impaired when he caught up with it. He had not activated his lights because the driver had not violated any traffic laws. After Officer Knopp turned around, the next time he saw the truck it was getting ready to pull into the gravel lot, so he was not able to see if the driver had committed any driving offense prior to pulling into the lot.

---

[2] At Thompson's request, the court agreed to review the body camera and phone videos outside of the courtroom. The certified record does not contain either of these videos.

Officer Knopp pulled into the gravel lot right behind the vehicle; he claimed he stated on the body camera that his police vehicle was partially on the roadway, although he did not put this in his report. He partially recalled Ashley Yates asking him why he pulled them over and got out of his police vehicle, despite having testified that the truck passengers told him they understood why he pulled them over. He then discussed the odor of marijuana coming from the truck and that he and two other officers thoroughly searched the truck. Officer Knopp was aware that Thompson was paralyzed from the stomach down as he told him this.

On redirect examination, the Commonwealth asked why Officer Knopp might want to question a driver after he had observed a vehicle being driven in this manner. In response, he stated he wanted to make sure the driver was not impaired. As a safety officer, he agreed that he provided assistance to lost drivers, and he approached the truck to see what was going on because of the suspicious behavior. He would activate his lights if his car was not all the way off the road for safety purposes of approaching cars.

On re-cross-examination, Officer Knopp agreed that there was nothing in his citation or report that he thought the driver might be impaired before he pulled him over. And there was nothing in his citation or report about his police

vehicle being partially off the road or that he activated his lights for the safety of people on the roadway.

Thompson called Ashley Yates as his sole witness. She was with Thompson in the truck during the stop. Thompson pulled more than 10 feet into the gravel lot, and the officer pulled in right behind the truck. She did not see that the officer's vehicle was in the road. She recorded the exchange between herself, Officer Knopp, and Thompson, which she provided. She said she had a disagreement with the officer about why he pulled them over, asking "Why did [the officer] throw blue lights on us?" She denied telling the officer that she understood why he pulled the truck over.

Following the hearing, Thompson filed a memorandum in support of a motion to dismiss the charges against him due to lack of reasonable suspicion. He argued that when Officer Knopp activated his emergency lights behind Thompson's vehicle, this constituted a stop. The officer did not have a reasonable, articulable suspicion that criminal activity was taking place when he began the investigatory stop as Thompson had not committed any traffic offense or violated any other laws.

The court entered its findings of fact, conclusions of law, and order on January 6, 2020, denying Thompson's motion. The court concluded that "the officer did not have cause to detain or search" in this case. However, it went on to

apparently apply the community safety doctrine, stating that "Police officers have a duty to aid and protect the communities in which they serve, not only from illegal activity, but for the general health, safety, and well-being of all citizens." The court relied on Officer Knopp's testimony that he did not know why the vehicle had stopped in the middle of the road and that, while he thought the driver of the vehicle might be impaired, he also considered that the driver might have been lost or experiencing a health condition. "[T]he officer would have been remiss had he not performed his due diligence in making sure the driver did not need his services." The court then stated that it was not until Officer Knopp approached the vehicle, "out of concern for the driver," that he smelled marijuana coming from the vehicle and suspected criminal activity was afoot. At that point, Officer Knopp could legally detain the driver.

Thompson moved the court to alter, amend, or vacate its order, arguing that it had erred in both its findings of fact and its conclusions of law, which the court denied in a calendar order entered January 9, 2020. Shortly thereafter, Thompson filed supplemental authorities in support of his motion to suppress related to whether a police officer's activation of emergency lights constitutes a show of authority resulting in a stop or seizure and related to the community caretaking doctrine described in *Poe v. Commonwealth*, 169 S.W.3d 54 (Ky. App. 2005).

On February 14, 2020, Thompson entered into a guilty plea conditioned upon his right to appeal the order denying his motion to suppress evidence, which the court accepted. The court dismissed several charges and amended others pursuant to the agreement. It ultimately found Thompson guilty of first-degree possession of a controlled substance (methamphetamine), first-degree possession of a controlled substance (cocaine), and tampering with physical evidence, and it sentenced him to seven years' imprisonment. The court permitted Thompson to post an appeal bond, and this appeal now follows.

On appeal, Thompson continues to argue that the seized evidence should have been suppressed and the charges against him dismissed due to a lack of a reasonable suspicion to stop his vehicle. We disagree.

This Court's standard of review of a ruling on a motion to suppress is two-fold. First, a reviewing court must determine whether the lower court's findings of fact are supported by substantial evidence. If so, such findings are conclusive. Kentucky Rule of Criminal Procedure (RCr) 8.27; *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998).

> When reviewing a ruling on a suppression motion, we defer to the trial court's findings of fact if they are not clearly erroneous. Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Simpson v. Commonwealth*, 474 S.W.3d 544, 546-547 (Ky. 2015). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men."

> *Owens-Corning Fiberglas Corporation v. Golightly*, 976
> S.W.2d 409, 414 (Ky. 1998) (citations omitted).

*Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016). Second, the court

must perform a *de novo* review of those factual findings to determine whether the

decision is correct as a matter of law. *Ornelas v. United States*, 517 U.S. 690, 697,

116 S. Ct. 1657, 1662, 134 L. Ed. 2d 911 (1996); *Commonwealth v. Banks*, 68

S.W.3d 347, 349 (Ky. 2001).

"At a suppression hearing, the ability to assess the credibility of

witnesses and to draw reasonable inferences from the testimony is vested in the

discretion of the trial court." *Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky.

App. 2009) (citing *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)).

"On review, the appellate court should not reevaluate the evidence or substitute its

judgment of the credibility of the witnesses for that of the jury." *Commonwealth v.*

*Suttles*, 80 S.W.3d 424, 426 (Ky. 2002) (citing *Commonwealth v. Jones*, 880

S.W.2d 544 (Ky. 1994)). "In conducting our review, our proper role is to review

findings of fact only for clear error while giving due deference to the inferences

drawn from those facts by the trial judge." *Perkins v. Commonwealth*, 237 S.W.3d

215, 218 (Ky. App. 2007) (citing *Whitmore*, 92 S.W.3d at 79).

Thompson's first argument addresses the court's failure to make any

conclusions related to whether Officer Knopp had a reasonable suspicion that

criminal activity was afoot at the time he activated his blue lights and stopped

behind Thompson's vehicle.  Here, the trial court appears to have implicitly

concluded that Officer Knopp did not have a reasonable, articulable suspicion

sufficient to stop the truck at the time he activated his lights and pulled in behind it.

But because Thompson raises this issue in his brief, we shall consider it.

In *Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky. 1998), the

Supreme Court of Kentucky addressed this area of the law, holding that:

> In order to justify an investigatory stop of an
> automobile, the police must have a reasonable articulable
> suspicion that the persons in the vehicle are, or are about
> to become involved in criminal activity.  *United States v.
> Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621
> (1981); *Commonwealth v. Hagan*, Ky., 464 S.W.2d 261
> (1971).  In order to determine whether there was a
> reasonable articulable suspicion, the reviewing appellate
> court must weigh the totality of the circumstances.  *See
> Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L.
> Ed. 2d 301 (1990).

This Court addressed the same issue in *Johnson v. Commonwealth*, 179 S.W.3d

882, 884 (Ky. App. 2005), *overruled on other grounds by Davis v. Commonwealth*,

484 S.W.3d 288 (Ky. 2016), setting forth the applicable law as follows:

> It is well settled that an investigative stop of an
> automobile is constitutional as long as law enforcement
> officials have a reasonable suspicion – supported by
> specific and articulable facts – that the occupant of the
> vehicle has committed, is committing, or is about to
> commit an offense.  *Delaware v. Prouse*, 440 U.S. 648,
> 99 S. Ct.1391, 59 L. Ed. 2d 660 (1979); *Collins v.
> Commonwealth*, 142 S.W.3d 113 (Ky. 2004).  In addition
> to the requirement that the stop be justified at its
> inception, the police officer's subsequent actions must be

> reasonably related in scope to the circumstances that gave credence to the initial stop. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229, 238 (1983).

Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996).

Thompson relies upon the Supreme Court of Kentucky's decision in *Strange v. Commonwealth*, 269 S.W.3d 847, 851 (Ky. 2008), to support his argument. In *Strange*, this Court stated the general rule that "[w]hen police officers, by means of physical force or show of authority, in some way restrain the liberty of a citizen, a 'seizure' of that person has occurred." *Id*. at 851. The question, then, is whether Officer Knopp's activation of his lights constituted a show of authority resulting in a seizure before the officer noticed the odor of marijuana. But the Supreme Court has also observed that "[a] seizure does not occur, however, if in response to a show of authority, the subject does not yield. In that event, the seizure occurs only when the police physically subdue the subject." *Taylor v. Commonwealth*, 125 S.W.3d 216, 219-20 (Ky. 2003) (citing *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). We agree with the Commonwealth that the activation of blue lights in this instance was not

enough to constitute a show of authority because Officer Knopp had not restrained Thompson's liberty at that point.

And the testimony is clear that Officer Knopp smelled the odor of marijuana as soon as he began approaching Thompson's vehicle, providing him with the necessary basis to continue the stop. *See Mayfield v. Commonwealth*, 590 S.W.3d 300, 303 (Ky. App. 2019) (quoting *Cooper v. Commonwealth*, 577 S.W.2d 34, 36 (Ky. App. 1979), *overruled on other grounds by Mash v. Commonwealth*, 769 S.W.2d 42 (Ky. 1989) ("[W]hen an officer approaches a 'car and smell[s] marijuana smoke, he ha[s] probable cause to believe that a misdemeanor [is] being committed[.]'")).

Next, Thompson argues that the trial court erred in concluding that the community care doctrine supported the legality of the stop. The trial court did not cite to any cases in support of this conclusion. However, as Thompson sets forth in his brief, this doctrine is extensively explained in *Poe*, *supra*:

> The community caretaking function was first articulated by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). The Court explained the idea in the context of a case where the police had searched a vehicle without a warrant that had been removed from an accident scene. The search occurred later in time from the accident and was made to locate the driver's, who was a Chicago police officer, service revolver. *Id.* 413 U.S. at 437, 93 S. Ct. at 2526. The Court found the search not to violate Constitutional principles stating:

-13-

Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id*. 413 U.S. at 441, 93 S. Ct. at 2528.

. . . .

. . . . In Poe's case the issue is not whether an inventory search meets the constitutional standard, but whether the stop itself qualifies under the community caretaking function.

All courts that have considered the community caretaking function have required, at a minimum, that the officer's actions must be measured by a standard of reasonableness. . . .

The question is was Officer Marszalek's stop of Poe reasonable in the circumstances. We hold it was not. The public need in this case is slight. People commonly become lost, if in fact Officer Marszalek's assumption about Poe's driving was correct. Police officers do not

-14-

normally pull someone over because they believe the operator of the vehicle needs directions. The intrusion on the privacy of the citizen, however, is great. The ordinary citizen would not expect a police officer to activate his emergency lights and effect a stop with which the citizen must comply without the stop being supported by some sort of traffic violation or criminal activity. Poe, of course, was free to stop the officer and ask directions. If he had initiated the stop, we would have a different situation.

As others have noted, for the community caretaking function to apply there must be some specific and articulable facts that would lead the officer to reasonably believe the citizen is in need of assistance. *Jestice*, *supra* 861 A.2d at 1064. An officer's practice cannot provide reasonable grounds. *Id.* In this respect we agree with the observation that:

> An officer's subjective explanation for stopping or detaining a driver does not control Fourth Amendment analysis. Courts are required to "make an objective assessment of the officer's actions" when determining if a stop was reasonable.

*State v. Rinehart*, 617 N.W.2d 842, 845 (S.D. 2000) (Sabers, J. dissenting) (quoting *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir. 1990) (citing *Scott v. United States*, 436 U.S. 128, 136, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 177 (1978))).

Such an objective assessment must also be applied in the context of an argument for the community caretaking function, otherwise, the protections afforded by the Fourth Amendment would quickly be eroded. Court approval of any reason related to "public need" for stopping and detaining a citizen based on the subjective beliefs of police officers is constitutionally insufficient.

In this case the district court found as a fact that Poe was stopped as a courtesy. That is, to possibly offer directions. After reviewing the testimony and arguments of the suppression hearing it cannot be held that this finding is clearly erroneous. Officer Marszalek himself stated he stopped Poe because he thought he might be lost.

But the legal conclusion drawn by the district court and upheld by the circuit court cannot stand. Officer Marszalek's belief that Poe may need directions is not a valid basis to stop him in these circumstances. Officer Marszalek observed no traffic violations, no criminal activity, and no evidence such as a flat tire, flashing lights, jumper cables, a raised hood or any other indication that Poe required assistance. The community caretaking function does not provide justification for the stop in this case. Whether it would provide justification in other circumstances we leave for another day.

*Poe*, 169 S.W.3d at 57-59 (footnotes omitted).

Based upon the holding in *Poe* and our review of the record, we must disagree with Thompson's argument, and we hold that the community care doctrine applies in this case to support Officer Knopp's stop. While the officer had not observed any traffic violations or criminal activity; there was no traffic or any pedestrians in sight; and there was no evidence that the driver needed or asked for any assistance from him, Officer Knopp's testimony that he suspected the driver may have been impaired is enough to support the application of this doctrine in this instance. Accordingly, we hold that the circuit court did not commit any error in

-16-

concluding that the community care doctrine applied to justify the stop in this case and properly denied the motion to suppress.

For the foregoing reasons, we affirm Thompson's conviction.

KRAMER, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Elmer J. George
Luci Hurst
Lebanon, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky