**Pleas Lucian KAVANAUGH, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–SC–000820–DG.

Supreme Court of Kentucky.

April 17, 2014.

Robert Chung–Hua Yang, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General, Courtney J. Hightower, Assistant Attorney General, Counsel for Appellee.

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

CUNNINGHAM, Judge.

At around 3:40 a.m., on March 6, 2010, Officer Richard Rice of the Lexington Police Department was in his cruiser patrolling a high crime area in Lexington. He came upon a vehicle parked on the side of the street with only its taillights on. Officer Rice drove past the vehicle, but did not initially see anyone inside. Nevertheless, he was concerned that the vehicle may have been stolen or otherwise involved in criminal activity. Officer Rice turned around and parked his cruiser behind the vehicle and radioed the police dispatcher the vehicle's license plate number. While awaiting a report, Officer Rice noticed two people sitting inside the vehicle.

Officer Rice exited his cruiser and approached the vehicle to investigate. He walked to the driver's side door and spoke with the driver, Faith Kimeli. He also observed Appellant, Pleas Lucian Kavanaugh, sitting in the passenger's seat. At this time, the officer explained that he was suspicious of the couple sitting in their vehicle with only the taillights on in a high crime area during the early morning hours. Ms. Kimeli explained that they had just dropped off a friend after returning from a club, and that she and Kavanaugh were just sitting in the car talking. The officer asked Ms. Kimeli for her identification and she willingly complied. During this exchange, Kavanaugh never made eye contact with the officer.

Officer Rice also asked Kavanaugh if he had identification, to which Kavanaugh answered that he did not. He then asked Kavanaugh for his name. Kavanaugh responded by inquiring as to why the officer wanted to know. Officer Rice explained that he needed to know because Kavanaugh had not presented any identification. Throughout this exchange, Kavanaugh never made eye contact with the officer and began reaching into his coat and digging in his pocket. Concerned that Kavanaugh might have a weapon, Rice asked him to step out of the vehicle.

After Kavanaugh exited the vehicle, he pulled a small black item from his pocket. Believing that the object could have been a weapon, Officer Rice ordered Kavanaugh to get his hands out of his pockets. Kavanaugh placed the object back in his pocket

and stepped towards the officer. Officer Rice explained to Kavanaugh that, due to his suspicious actions, he needed to frisk him for a weapon. Kavanaugh refused and then removed a small, black digital recording device from his pocket and spoke into it, saying something to the effect that he was being harassed. Kavanaugh continued to be non-compliant and refused to put the recorder down. Officer Rice eventually initiated a *Terry* frisk[1] by having Kavanaugh place his hands behind his back, although Kavanaugh never relinquished the recorder.

Sometime during the search, Officer Rice removed Kavanaugh's wallet from his person in order to look for identification, to which Kavanaugh responded by yelling, "Get out of my wallet!" Kavanaugh then disengaged his hands, placed the recorder on the trunk of the car, spun around quickly, and grabbed Officer Rice in a "bear hug." As a result of the physical contact, Officer Rice arrested Kavanaugh and radioed for backup. When other officers arrived on the scene, they searched Kavanaugh and discovered 0.5 grams of crack-cocaine in his right front pants pocket.

Kavanaugh was charged in the Fayette Circuit Court with one count of menacing and one count of first-degree possession of a controlled substance, first offense. The latter was amended to one count of criminal attempt to possession of a controlled substance. Kavanaugh filed a motion to suppress evidence, which the trial court denied. He then entered a conditional guilty plea to both charges and was sentenced to twelve months imprisonment for the attempted possession charge and thirty days for menacing, to be served concurrently. He was then placed on conditional discharge for one year.

A Court of Appeals panel unanimously affirmed the trial court's denial of Kavanaugh's suppression motion and we granted discretionary review. After reviewing the record and the law, we affirm that decision.

### Suppression Motion

The thrust of Kavanaugh's argument is that the investigatory (or *Terry*) stop was unlawful and requires suppression of the evidence later obtained from the search incident to arrest. Our standard of review of the trial court's denial of a suppression motion is twofold. First, the trial court's findings of fact are conclusive if they are supported by substantial evidence; and second, the trial court's legal conclusions are reviewed de novo. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky.2008); RCr 9.78. Although we have reservations concerning the justification and scope of the *Terry* stop, they are not determinative in our resolution of the present case.

### Identification

In the context of a *Terry* stop, an "officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Whether a *Terry* detainee is required to provide identification to an officer is determined by state law. *See Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, et al.*, 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (holding that "[a] state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions"). In support, the *Hiibel* Court cited twenty other states with so-called "stop and identify" laws. *Id.* at 182, 124 S.Ct. 2451. Ken-

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

tucky is not listed as one of those states. The *Hiibel* Court further held that, in states without such laws, "a suspect may decline to identify himself without penalty." *Id.* After reviewing pertinent federal and Kentucky law, we conclude that the Commonwealth of Kentucky is not a "stop and identify" jurisdiction. Therefore, absent a statute requiring disclosure, Kavanaugh could not have been arrested and prosecuted for failure to provide identification. However, since an officer is constitutionally permitted to request identification, any failure to comply may still be considered along with other sufficient factors demonstrating reasonable suspicion.

### Search Incident to Arrest

 Our reservations regarding the reasonableness of the *Terry* frisk do not obviate the fact that Kavanaugh assaulted Officer Rice. The officer specifically testified at the suppression hearing that, during the search, Kavanaugh broke free from his grasp, faced him, and refused to turn around. Kavanaugh then grabbed Rice in a "bear hug." Once this assault occurred, Officer Rice unquestionably had probable cause to arrest Kavanaugh.

The search of Kavanaugh's person that yielded the cocaine occurred *after* the arrest, not during the *Terry* frisk. Therefore, the contraband was obtained from a valid search incident to a valid arrest. Although the issue in the present case arises from a *Terry* stop, Kentucky cases involving detainees' claims of self-defense during arrests prove instructive.

It is well-settled that "[t]here is no right to use self-defense during an arrest." *Stopher v. Commonwealth*, 57 S.W.3d 787, 803 (Ky.2001) (citing *Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky.1997)). In *Baze*, the Court affirmed the trial court's determination that appellant's beliefs regarding the legality of his arrest were irrelevant to any claim of justification for

murdering police officers. *Id.* Further, the commentary to Kentucky's resisting arrest statute explains that "the unlawfulness of an arrest may not be raised as a defense to a prosecution under this section . . . [unless] the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested." KRS 520.090. Federal case law is also instructive.

In *United States v. Beauchamp*, the United States Court of Appeals for the Sixth Circuit reaffirmed its holding that "if a suspect's response to an illegal stop is a new and distinct crime, such as flight or *use of force*, any evidence recovered incident to the arrest for the subsequent crime is not tainted by the unlawfulness of the initial detention." 659 F.3d 560, 574 (6th Cir.2011) (emphasis added) (citation omitted); *see also United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir.1982) (holding that if a suspect's response to an illegal stop "is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime"); *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.1995) (holding that "a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest").

We conclude that Kavanaugh's assault of Officer Rice constituted an intervening act that purged the taint, if any, that resulted from any detention which may have violated the Fourth Amendment.

### Conclusion

For the foregoing reasons, the judgment of the Court of Appeals is hereby affirmed.

All sitting. All concur.