RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0460-MR

TONY L. HALE                                                         APPELLANT

v.          APPEAL FROM FAYETTE CIRCUIT COURT
            HONORABLE KIMBERLY N. BUNNELL, JUDGE
            ACTION NO. 20-CR-00864

COMMONWEALTH OF KENTUCKY                                               APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: EASTON, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: Tony L. Hale appeals the Fayette Circuit Court's judgment

convicting him of a second or greater offense of trafficking in a controlled

substance, possession of marijuana, and possession of drug paraphernalia. We

reverse and remand for the reasons stated herein.

# BACKGROUND

On August 18, 2020, Detective Brendan Hazelwood and other detectives of the Lexington Police Department were conducting surveillance in areas of reported drug activity in east Lexington. While seated in his unmarked vehicle, Detective Hazelwood observed a white GMC SUV operated by Hale, an individual unknown to him, stop at the corner of 7th and Jackson Streets during the late afternoon or early evening daylight hours. An unknown male subject approached Hale's vehicle, entered the front passenger side for a short period, and then exited the vehicle. The unknown male subject then conversed with Hale by the vehicle's side for a short time before Hale drove away.

Detective Hazelwood and the other detectives followed Hale to Barksdale Drive where Hale parked his vehicle and was observed entering a residence. While inside the residence, Hale remotely locked his vehicle multiple times using his key fob and, after a short stay, proceeded back into his vehicle and left. Based on these observations, Detective Hazelwood became suspicious Hale was engaged in drug-related activity. At approximately 7:00 p.m., Detective Hazelwood radioed for an available patrol unit to initiate a traffic stop on Hale's vehicle. Officer Dan Hempel and Officer Zachary Flowers received the call and initiated a stop on Hale's vehicle for failure to use a turn signal while changing lanes on southbound Interstate 75.

-2-

A K-9 unit was requested by an unknown officer to come to the scene of the stop while Officer Hempel and Officer Flowers issued a citation. Detective Hazelwood took a nearby exit and remained off scene while maintaining radio contact. Soon after Hale's vehicle was pulled over, Officer Hempel approached to inform Hale he was stopped for a lane change violation. When asked where he was coming from, Hale indicated his parents' house on Linton Road. At some point thereafter, Officer Hempel observed Hale to appear nervous and to be exhibiting shaking hands. Due to Hale's inability to produce proof of insurance, Officer Hempel returned to his patrol unit to generate a traffic citation for a lane change violation and no proof of insurance. Detective Hazelwood radioed Officer Hempel and told him to "take [his] time" generating the citation as the K-9 unit was enroute.

Ultimately, Officer Hempel returned to Hale's vehicle, provided the citation, and informed Hale he was "free to go." Officer Hempel walked back toward his patrol unit and conversed with Officer Flowers who reminded him they had an ongoing narcotics investigation. This prompted Officer Hempel to return to Hale's vehicle for additional questioning. When again asked where he had come from, Hale indicated he came from his parents' house on Linton Road. After some follow up questions, Officer Hempel then informed Hale to "hang on a second."

Shortly thereafter, Hale found proof of his insurance, and Officer Hempel agreed to void the no insurance charge and re-issue the citation.

Officer Hempel walked back to his patrol unit to begin reissuing a new citation, and the K-9 unit, which recently arrived on scene, ultimately conducted a sniff search of Hale's vehicle. While Officer Hempel worked on reissuing the citation, the K-9 unit alerted to the presence of drugs and a search of Hale's vehicle resulted in the discovery of cocaine, marijuana, and $3,000.00 in cash.

Hale was indicted on October 13, 2020, and a motion to suppress evidence from the vehicular search was filed on February 26, 2021. Hale argued the police stopped his vehicle without sufficient cause to initiate a traffic stop, and in the alternative, unlawfully prolonged it to conduct a drug investigation. A suppression hearing was held on June 29, 2021, during which Detective Hazelwood, Officer Hempel, and Officer Flowers testified. Video produced from body cameras worn by Officer Hempel and Officer Flowers was played at the hearing.

The Fayette Circuit Court denied the motion to suppress and entered oral findings stating that observed lane change violations provided cause for the traffic stop, and its extension was justified based on occurrences after the stop. The trial court found Hale's nervousness and statements regarding his prior

whereabouts provided the officers with reasonable suspicion during the stop when combined with Detective Hazelwood's prior observations. On July 6, 2021, the trial court entered a written order denying the motion to suppress for the "reasons stated on the record." On October 22, 2021, Hale filed a motion to reconsider the denial of his motion to suppress citing *Commonwealth v. Clayborne*, 635 S.W.3d 818, 821 (Ky. 2021), which was finalized on October 20, 2021. On January 28, 2022, the trial court denied the motion to reconsider finding the facts of *Clayborne* to be distinguishable.

On February 25, 2022, Hale preserved his right to appeal the denial of suppression and entered a conditional guilty plea to a second or greater offense of trafficking in a controlled substance, possession of marijuana, and possession of drug paraphernalia. Hale was sentenced to ten years in prison on April 14, 2022. This appeal followed.

## STANDARD OF REVIEW

A review of a denial of a motion to suppress involves a twofold determination of whether the trial court's findings of fact are supported by substantial evidence along with a *de novo* review of the trial court's legal conclusions. *Kavanaugh v. Commonwealth*, 427 S.W.3d 178, 180 (Ky. 2014). If the trial court's fact findings are supported by substantial evidence, they are conclusive. *Id.* "Substantial evidence is evidence, taken alone or in light of other

proof, that a reasonable mind would find sufficient to support a conclusion." *Cox v. Commonwealth*, 641 S.W.3d 101, 113 (Ky. 2022) (internal quotation marks and citation omitted). The Commonwealth bears the burden of proof by a preponderance of the evidence at a suppression hearing. *Cook v. Commonwealth*, 826 S.W.2d 329, 332 (Ky. 1992).

## ANALYSIS

Police can stop and briefly detain a person, or a vehicle, to investigate potential criminal activity if the officer has reasonable suspicion. *Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018) (citation omitted). While requiring less than a probable cause showing, "reasonable suspicion is more than an unparticularized suspicion or hunch" and "requires at least a minimal level of objective justification for making the stop" based on articulable facts. *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky. 2009) (internal quotation marks and citation omitted); *Commonwealth v. Priddy*, 184 S.W.3d 501, 505 (Ky. 2005). When scrutinizing these investigatory detentions, often dubbed *Terry*[1] stops, a reviewing court should review the totality of the circumstances with a "wide lens" when determining if they establish reasonable suspicion. *Bauder*, 299 S.W.3d at 591; *Priddy*, 184 S.W.3d at 511 (citation omitted).

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

-6-

On appeal, Hale asserts three challenges to his detention.  First, there was insufficient cause to initiate a traffic stop.  Second, if it was a lawful traffic stop, it was prolonged past the point it concluded or should have concluded.  Third, it was prolonged without independent reasonable suspicion to await the arrival of the K-9 unit.  We examine each argument individually.

**A. There was Probable Cause for the Traffic Stop.**

"It has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred." *Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016) (internal quotation marks and citation omitted).  Hale argues the police did not have sufficient cause to initiate a traffic stop on his vehicle for a lane change violation.  For support, Hale points to the absence of any body camera video supplied at the suppression hearing capturing any violation and argues the officers' testimony asserting they personally observed the violation is unreliable.

We will note the original body camera video played at the suppression hearing was not formally submitted and admitted into the record before us nor was it played in its entirety.  Therefore, we can only rely on the video segments played during the suppression hearing.  We must further rely on contextualizing testimony concerning certain segments played due to some difficulty in discerning the audio.

Officer Hempel and Officer Flowers both testified that in accordance with departmental policy, their body cameras are not activated until their emergency lights are turned on. Officer Hempel additionally testified, upon activation, the body cameras undergo a "buffering mode" during which they "don't capture everything." The trial court found this explanation was sufficient, and the record does not demonstrate anything undermining the officers' credibility. We defer to the trial court's finding the officers observed the violations and had cause to initiate a traffic stop. *See Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky. App. 2009) (citation omitted) ("At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court.").

**B. The Traffic Stop was Prolonged.**

"A seizure for a traffic violation justifies a police investigation of *that violation*." *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015) (emphasis added). Traffic stops are more analogous to *Terry* stops, and "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Id.* (citations omitted). The authority for the seizure ends when the related tasks are completed or should have been completed. *Id.* There are no exceptions for *de minimis*

-8-

prolongments, and a sniff search for drugs falls outside the scope of routine traffic law enforcement because it is purposed for detecting evidence of criminal activity. *Commonwealth v. Lane*, 553 S.W.3d 203, 206-07 (Ky. 2018) (citation omitted). However, unrelated investigative inquiries are permitted so long as they occur "simultaneously" while "completing the purpose of the stop." *See Commonwealth v. Mitchell*, 610 S.W.3d 263, 270 (Ky. 2020). Such inquiries must not add time to the stop. *Commonwealth v. Conner*, 636 S.W.3d 464, 474 (Ky. 2021).

Hale contends the traffic stop was prolonged by Officer Hempel delaying the write-up of the original citation to allow time for the K-9 unit's arrival and further detaining him after the original citation was provided to him. The Commonwealth counters that the traffic citation and the drug investigation were pursued concurrently without any prolongment since the K-9 unit's alert and the subsequent vehicular search occurred while Officer Hempel was reissuing the traffic citation to void the no proof of insurance charge.

As proof of prolongment, Hale points to the disparity in time between the original and the reissued citations noting it took approximately 16 minutes to complete the original and eight minutes to finish the reissued citation.[2] The trial

---

[2] In its brief, the Commonwealth states it took twenty-two (22) minutes to complete the original citation. We presume the Commonwealth is including the time it took to gather Hale's information whereas Hale is only factoring in the time it took to complete the write-up.

Additionally, Hale asserts, "Instead of diligently pursuing the writing of the [original] citation, Officer Hempel accessed Google several times." The original copies of the body camera video

court was unpersuaded and determined the reissued citation was quicker to complete because Hale's information had already been entered and Officer Hempel only needed to make a modification. This was supported by Officer Hempel's testimony.

However, the situation is complicated by Detective Hazelwood's radioed statements to Officer Hempel to "take [his] time" while writing the original citation. During Detective Hazelwood's testimony, the trial court directly inquired whether he meant for Officer Hempel "to go slow so the K-9 could get there." Detective Hazelwood replied, "Yes, ma'am, that's what I said. I was implying that, like, there's no, there's no rush to, to get everything done with since it's a narcotics investigation." The detective's own testimony explicitly acknowledged, at this moment, the purpose of the stop was in furtherance of a drug investigation. *See Clayborne*, 635 S.W.3d at 824 (citation omitted) (emphasis in original) ("[A] stop is extended when an officer pursues purposes or tasks unrelated to his or her main objective of addressing a traffic violation *and* that new pursuit adds time to the stop."). When comparing body camera footage timestamps identified by the prosecution at the suppression hearing, we can

were not submitted into the record, and no facts or evidence of this was presented during the suppression hearing. Therefore, we decline to consider this assertion on appeal. *See Heltsley v. Frogge*, 350 S.W.3d 807, 811 (Ky. App. 2011) (citation omitted).

-10-

approximate seven minutes elapsed between Detective Hazelwood's statement and the moment after Officer Hempel informed Hale he was "free to go."[3] We cannot conclude with confidence there was not at least a *de minimis* delay in the citation's completion based on the detective's own clear testimony and this passage of time. *See United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012) (emphasis added) ("Because a crafty officer . . . *may simply delay writing a ticket* for the initial traffic violation until after she has satisfied herself that all of her hunches were unfounded, we also treat the unreasonable extension of a not-yet-completed traffic stop as a seizure.").

Hale further maintains once Officer Hempel handed him the original citation, the traffic stop's purpose definitively concluded, and the actions thereafter were a clear prolongment. Citing *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014), and *Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006), the Commonwealth argues Officer Hempel "forgot about the ongoing narcotics investigation" and "made a mistake" informing Hale he could leave.

---

[3] The prosecution stated the body camera footage containing Detective Hazelwood's statement was taken approximately 17 minutes into the stop while video of Officer Hempel walking away after handing Hale the original citation occurred around 24 minutes.

In *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 788, 172 L. Ed. 2d 694 (2009), the United States Supreme Court stated a traffic stop "begins when a vehicle is pulled over" and "[n]ormally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." A detention occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). After Hale was given the original citation, it is not in dispute Officer Hempel told Hale he was "free to go," and the record demonstrates Officer Hempel walked away from Hale's vehicle. At this moment, we hold that a reasonable person would conclude he was no longer being detained, and as a result, the traffic stop was no longer occurring contemporaneously with a drug investigation.

Officer Hempel's "mistake" and the subjective intent of the other officers are not relevant, and regardless, Officer Hempel testified it was his intent to allow Hale to leave. *See Mendenhall,* 446 U.S. at 554, 100 S. Ct. at 1877 n.6 (stating that the subjective intention of a federal agent to detain a subject was irrelevant except insofar as that may have been conveyed to the detainee). Once Hale received the citation, there was no longer cause to continue a traffic stop even if the officers intended to. Hale's later discovery of his proof of insurance is

immaterial because it occurred after the original citation was completed, and Officer Hempel was not obligated to reissue another citation.

This situation is not unlike *Turley v. Commonwealth*, 399 S.W.3d 412 (Ky. 2013), wherein a Kentucky State Police trooper initiated a traffic stop, and after conducting a field sobriety test and verifying the driver's documentation, told the driver to "have a good night." The Kentucky Supreme Court held that, upon bidding the driver "good night," the purpose of the traffic stop concluded, and the trooper's subsequent questioning and search prolonged the detention. *Id.* at 422. In accordance with this holding and considering Detective Hazelwood's testimony, we conclude Hale's traffic stop was prolonged.

## C. The Commonwealth Failed to Prove Reasonable Suspicion was Developed Prior to Prolongment.

While an officer may perform certain unrelated checks during a lawful traffic stop, it may not be done in a manner that prolongs the stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615. Otherwise, "subsequent discovery of contraband is the product of an unconstitutional seizure." *See Commonwealth v. Conner*, 636 S.W.3d 464, 473 (Ky. 2021) (footnote omitted). Consequently, once the stop was prolonged, Officer Hempel and Officer Flowers were required to possess reasonable suspicion of drug activity to further detain Hale to await the K-9 unit's arrival. *See Turley*, 399 S.W.3d at 421 (internal quotation marks and

-13-

citation omitted) ("[A]n officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion [of] criminal activity . . . ."). As a result, it is important to examine the sequencing of the events and how each contemporaneously observed factor related to one another when weighing the totality of the circumstances.

Up to the initiation of the traffic stop, the trial court concluded there was no reasonable suspicion Hale was involved with drug activity. It is undisputed the traffic stop was initiated at Detective Hazelwood's request to assist a drug investigation. *See Blake*, 540 S.W.3d at 373 ("[I]n determining whether reasonable suspicion exists, the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration."); *Mitchell*, 610 S.W.3d at 269 (citation omitted) ("[A]n officer's subjective motivations for the stop are not relevant . . . ."). Detective Hazelwood witnessed Hale make two brief stops in areas associated with drug activity during daylight hours. During these stops, Hale was respectively observed speaking with an unknown male subject, both inside and outside of his vehicle, and later entering a residence wherein he repeatedly locked his vehicle. While conceding he did not witness anything transactional, Detective Hazelwood testified the short nature of Hale's stops was consistent with drug trafficking activity in the area and based on his experience as narcotics

-14-

investigator. Additionally, Hale's repetitive locking of his vehicle was viewed by Detective Hazelwood as "odd" and "not a common thing to do."

The trial court concluded the emergence of additional factors after the stop created reasonable suspicion to justify shifting the stop's purpose from a traffic citation to a drug investigation. Officer Hempel testified that during the stop, although Hale was very polite, he was nervous to the point he was fumbling with and nearly dropped his wallet while retrieving his driver's license. Officer Hempel also testified that, when asked where he was coming from, Hale stated he was coming from his parents' house on Linton Road. *See Carlisle v. Commonwealth*, 601 S.W.3d 168, 177 (Ky. 2020) (internal quotation marks and citation omitted) ("[G]enerally, questions about travel plans are ordinary inquiries incident to a traffic stop."). Based on this, Officer Hempel testified Hale was lying because it conflicted with Detective Hazelwood's observations of Hale at the intersection of 7th and Jackson Streets as well as Barksdale Drive.

When weighing their totality, "a reviewing court should not view the factors relied upon by the police officer(s) to create reasonable suspicion in isolation but must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky. App. 2003) (footnote omitted). However, a combination of factors, which are otherwise innocent when

viewed in isolation or subject to significant qualification, cannot add up to reasonable suspicion absent concrete reasons for such an interpretation. *See Stepp*, 680 F.3d at 665 (citations omitted); *United States v. Smith*, 263 F.3d 571, 594 (6th Cir. 2001) (citation omitted).

We agree with the trial court that Detective Hazelwood's prior observations of Hale did not amount to reasonable suspicion of drug activity. Hale's observed behavior was not inherently indicative of criminality, and the only factor which provided some indicia of criminality was the fact it occurred in an area of suspected drug activity. *See Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). However, even in this context, it is insufficient.

In Hale's motion to reconsider the denial of suppression, he cited *Clayborne*, 635 S.W.3d 818, but we instead cite to this Court's unpublished decision in *Jones v. Commonwealth*, No. 2018-CA-001181-MR, 2019 WL 2321654 (Ky. App. May 31, 2019), due to its more similar circumstances.[4] In *Jones*, a Lexington Police officer observed a white van containing three unknown occupants around 12:50 a.m. at the intersection of East 7th Street and Maple Street which was identified as a "high narcotics area." An individual standing outside was observed approaching the van and leaning into the vehicle to speak with the

---

[4] *Jones* is cited only as persuasive authority pursuant to Kentucky Rule of Appellate Procedure 41(A).

-16-

driver. When the observing officer pulled his vehicle closer to the intersection, the van pulled away which prompted the suspicions of the officer. The officer followed the van, ran the license plate number, and learned it was registered to an individual in his forties which did not match the apparent ages of the van's occupants. The officer initiated a traffic stop and later observed the driver's nervous hand shaking while one of the passengers avoided making eye contact. The officer identified the subjects and, after learning both had prior narcotics and violent crime charges, requested dispatch of a K-9 unit to the scene. The K-9 unit ultimately detected the presence of drugs, and a search of the van uncovered synthetic marijuana and a set of digital scales. *Id.* at *1. This Court held these factors were insufficient to justify prolongment of the stop to await the K-9 unit. *Id.* at *4.

Likewise, Officer Hempel and Officer Flowers required intervening circumstances to tip the balance in the weighing of these factors. While nervousness can be a contributing factor, it is not the tipping point in this scenario just as this Court determined it was not with the very similar circumstances presented in *Jones*. 2019 WL 2321654, at *4; *see also Moberly v. Commonwealth*, 551 S.W.3d 26, 32 (Ky. 2018) ("Heightened nervousness is common among drivers detained by a police officer for a traffic violation.").

This brings us to the remaining factor in this analysis which is Hale's untruthfulness regarding his previous whereabouts. Hale argues this too is insufficient. Although not discussed at the suppression hearing, Hale concedes in his appellate brief that the first mention of his prior whereabouts occurred one minute and 23 seconds after the start of footage taken from Officer Hempel's body camera, which began to record prior to Hale's vehicle being pulled over.[5] Despite this, Hale proclaims the alleged untruthful nature of this information "was not completely elicited . . . until after he was illegally detained" when "Officer Hempel reengaged him to ask him exactly where he was coming from."

We must first determine whether Hale's dishonesty occurred *contemporaneously with a diligent pursuit* and *prior to the prolongment* of the traffic stop. When relying upon the underdeveloped record before us concerning this key point, we are again unable to conclude with confidence this factor sufficiently presented itself prior to the stop's prolongment, and as a result, it is ultimately unnecessary to answer whether this served as the clinching factor.

The trial court's written order contains no other findings apart from those verbally stated on the record at the conclusion of the suppression hearing.

---

[5] Hale asserts a Google Maps search demonstrates Linton Road is "a mere three (3) miles away from the area in which he was first observed by the Lexington Police." Nothing relating to this was presented at the suppression hearing, and we decline to consider it on appeal. *See Heltsley*, 350 S.W.3d at 811.

The trial court's oral findings reasoned the officers secured reasonable suspicion from "the moment they observed [Hale] being nervous and from the moment he started lying," and as a result, the "extension" of the stop was permissible. While not specifically articulated on the record, it is clear the inference was that Hale was attempting to conceal he had just left an area associated with drug activity. *See United States v. Boyce*, 351 F.3d 1102, 1109 (11th Cir. 2003) ("[C]onflicting answers about where one is traveling to or from may give rise to a suspicion of drug activity because most drivers know the answers to these questions and because the driver may be trying to hide the fact that he is going to or coming from a known drug-source state."). However, the trial court did not indicate the specific moment it believed Hale was being willfully misleading relative to the stop's prolongment.

For reasons already stated, we must rely on segments of body camera footage presented at the suppression hearing along with any relevant testimony. The only footage presented by the Commonwealth capturing Hale's explicit mention of Linton Road or any discussion by the officers regarding this at the scene was filmed after the original citation's conclusion. The Commonwealth argues Hale "lied by omission" for failing to mention he had been at the corner of 7th and Jackson Streets as well as Barksdale Drive, but the only clear questioning we can observe in the presented footage on the matter occurred after Officer

Hempel gave the original citation to Hale. While Hale's brief concedes he was asked where he was coming from shortly after being pulled over, it does not concede the officers had specifically yet asked him if he made any other stops. Additionally, Hale's brief indicates the questioning eliciting this information occurred within a three-second window. We will note that the citation contained in the record lists Linton Road as Hale's residential address. Thus, we cannot infer based on the facts conceded that Hale was misleading the officers at this specific point.

The testimony concerning this factor was largely conclusory and does not sufficiently indicate exactly when or if Hale's untruthfulness manifested prior to the stop's prolongment. When questioned by the trial court concerning his statements to Officer Hempel to "take [his] time" while writing the original citation, Detective Hazelwood testified as indicated below:

> **Trial Court**: So, Detective, are you saying that it was your belief that . . . you all could keep this man as long as you wanted to at this point?
>
> **Detective Hazelwood**: Yes, ma'am.
>
> **Trial Court**: And why is that?
>
> **Detective Hazelwood**: Um, because I was conducting basically a *Terry* stop for purposes of a narcotics investigation. I believed that he was, uh, engaging in narcotics trafficking.

> **Trial Court**: *And that's because of what you saw at the, on the street and at the house?*
>
> **Detective Hazelwood**: Yes, ma'am.

After the conclusion of Detective Hazelwood's direct examination, the trial court further questioned:

> **Trial Court**: So, if this was a *Terry* stop, uh, could you have kept him for a long time and just waited for the K-9 to get there?
>
> **Detective Hazelwood**: Yes ma'am.
>
> **Trial Court**: Okay. So, and I think it was you that said on the tape, "take your time, not sure if the K-9 will make it?"
>
> **Detective Hazelwood**: Yes, ma'am.
>
> **Trial Court**: *Okay so if you could just wait until the K-9 got there, why would you have to say, "take your time, not sure if the K-9 will make it?"*
>
> **Detective Hazelwood**: Just to make sure that the officers understood that we had, we had time to wait. That there wasn't a rush to go up there and, uh, give a traffic citation and cut the, the occupant loose.

In its findings, the trial court expressed it was "concerned" and "troubled" by Detective Hazelwood's testimony. We share those concerns particularly when Detective Hazelwood could not provide an answer reconciling this inconsistency. Detective Hazelwood testified he maintained radio contact with the officers for updates during the traffic stop, and the information regarding

Hale's prior whereabouts was communicated to him by the officers at the scene. Detective Hazelwood further testified Hale's dishonesty was a factor justifying detention on suspicion of drug trafficking but never indicated exactly when this was obtained. The inconsistency presented by Detective Hazelwood's testimony cannot simply be ignored when nothing in the record can support at least a reasonable inference Hale's deception presented itself prior to Detective Hazelwood's radioed statements to Officer Hempel.

Therefore, we hold the trial court's finding that reasonable suspicion was secured prior to the traffic stop's prolongment is unsupported by substantial evidence and clearly erroneous. We reverse the trial court's ruling and hold that all evidence seized from Hale's vehicle must be suppressed.

## CONCLUSION

Warrantless searches and seizures are presumed unconstitutional absent a recognized exception, and it is the burden of the Commonwealth to prove such an exception. The Commonwealth did not meet its evidentiary burden to overcome the presumption Hale's detention and the subsequent warrantless search were unconstitutional. For the foregoing reasons, we reverse the trial court's findings and remand the case for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Russell J. Baldani
Whitney D. Rowe
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky