RENDERED: FEBRUARY 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0378-MR

JOSEPH POLLARD                                                                    APPELLANT

v.      APPEAL FROM FAYETTE CIRCUIT COURT
        HONORABLE THOMAS L. TRAVIS, JUDGE
        ACTION NO. 21-CR-00839

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

COMBS, JUDGE: This is a criminal case involving a Fourth-Amendment issue.

Appellant, Joseph Pollard, appeals the trial court's denial of his motion to suppress.

After our review, we affirm.

On June 29, 2021, an unnamed 911 caller reported the following

information:

> There's a guy wearing a gray shirt and a khaki pair of
> pants walking on Oak Hill and Morgan. He's got dark
> colored hair, and he [unintelligible] . . . and he's just a

white guy, he's waiving it around with another white guy with a blue jersey on. He's just like waving a gun up in the air.

Lexington Police Officer D'Aniello was dispatched. He spotted two men walking about in the vicinity matching the caller's description, stopped them, and conducted a pat-down -- but did not find a gun. Pollard, who was wearing a blue jersey, provided the officer with incorrect identification information despite having been advised that giving false information was an arrestable offense. When further investigation showed that Pollard had an outstanding warrant, Officer D'Aniello arrested him. A search of his backpack incident to the arrest revealed methamphetamine, suspected heroin, and drug paraphernalia.

On August 16, 2021, a Fayette County Grand Jury indicted Pollard on one count of trafficking in controlled substance, first degree (greater than 2 grams methamphetamine); one count of possession of drug paraphernalia; one count of giving false identifying information to an officer; and one count of persistent felony offender, first degree.

On December 2, 2021, Pollard filed a motion to suppress all evidence seized as a result of the police encounter. The motion was heard on December 20, 2021. Officer D'Aniello testified. On February 25, 2022, following the submission of briefs, the trial court entered an Order denying the motion. In relevant part, the trial court made the following findings of fact:

Officer D'Aniello stopped Pollard and the other man, and his body camera recorded the interaction. He informed them that an individual had reported that they were waving a firearm around. However, neither man was seen possessing a gun, and Officer D'Aniello was unable to find a gun on either man's person after frisking them. Instead, Officer D'Aniello was only able to find a box cutter and a butter knife. Following the frisk, he asked Pollard if he could search his backpack. Pollard refused Officer D'Aniello's request and asked why he could not leave. Officer D'Aniello advised Pollard that he would be detained until the investigation into the firearm report concluded.

Officer D'Aniello asked the men if they had any forms of identification, to which they both responded that they did not. In lieu of I.D. cards, Officer D'Aniello attempted to gather information from the men by asking for identifying information, such as their names, their dates of birth, and their social security numbers. In response, Pollard attempted to call his attorney, but Officer D'Aniello informed him that he was not allowed to call an attorney because none of the questions were [*sic*] incriminating in nature. Despite Officer D'Aniello advising the men that providing false information to an officer is a separate arrestable offense, Pollard gave false or half-truthful answers to the questions asked. Pollard stated his legal name but spelled it incorrectly. Additionally, Pollard attempted to hide his real date of birth by giving Officer D'Aniello the correct month and year of his birth, but he either withheld the day or provided an incorrect day.

Even without Pollard's complete date of birth, Office[r] D'Aniello was able to locate Pollard in the police database . . . [and] found there was an outstanding warrant for Pollard's arrest. Subsequently, Officer D'Aniello arrested Pollard per the outstanding warrant and for giving false identifying information. Incident to Pollard's arrest, his backpack was searched, and police

-3-

discovered 17.6 grams of heroin, 12.1 grams of methamphetamine, two digital scales, a pipe, and several .380 auto cartridges. . . .

Pollard argued that the 911 call amounted to an anonymous tip and thus could not be utilized to establish reasonable suspicion to properly stop Pollard. The Commonwealth contended that a 911 call is separate and distinct from a truly anonymous tip because "[a] 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." *Navarette v. California*, 572 U.S. 393, 400 (2014). It also found that a contemporaneous report of what the caller saw as was made in this case is "especially reliable" *Id.* at 399. The court agreed with the Commonwealth that a 911 call rises above a purely anonymous tip.

Nevertheless, the trial court concluded that the information supplied by the 911 caller, coupled with what law enforcement observed, did not create reasonable suspicion that criminal activity was afoot. "Even a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" *Navarette*, 572 U.S. at 401 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The court explained that nothing in the caller's account suggested that Pollard was acting in a hostile or threatening manner. Moreover, in states like Kentucky, where "possession of an unconcealed firearm is legal, the mere observation or report of an unconcealed firearm cannot, without more,

generate reasonable suspicion for a *Terry* stop[.]" *Pulley v. Commonwealth*, 481 S.W.3d 520, 526 (Ky. App. 2016). The court further explained that "reasonable suspicion can[not] be 'predicated upon an unidentified person's accurate description of [another individual], coupled with the bare assertion that [the individual] had engaged in what might be considered offensive -- though not criminal -- conduct.'" *Collins v. Commonwealth*, 142 S.W.3d 113, 117 (Ky. 2004).

Although the trial court concluded that the initial stop was "improper," it determined that Pollard's subsequently providing false identifying information constituted a separate, arrestable offense that removed any arguable taint that the recovered evidence may have had. The court explained as follows:

> [A]lthough an officer conducting a *Terry* stop "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions . . . the detainee is not obliged to respond." [quoting *Kavanaugh v. Commonwealth*, 427 S.W.3d 178, 180 (Ky. 2014).] . . . Here, however, Pollard voluntarily provided Officer D'Aniello with what turned out to be false identifying information, which is a Class B misdemeanor pursuant to KRS 523.110.[1] Therefore, the Court is compelled to find

---

[1] Kentucky Revised Statutes (KRS) 523.110(1) provides that:

> A person is guilty of giving a peace officer false identifying information when he or she gives a false name, address, or date of birth to a peace officer who has asked for the same in the lawful discharge of his or her official duties with the intent to mislead the officer as to his or her identity. The provisions of this section shall not apply unless the peace officer has first warned the person

that Pollard subsequently committed a new and distinct crime. The discovery of this correct information led to the revelation he had outstanding warrants for his arrest. Moreover, because the backpack containing the drug paraphernalia was not searched until after Pollard's valid arrest, the evidence was not tainted by the unlawfulness of Officer D'Aniello's *Terry* stop.

Pollard entered a conditional guilty plea to the amended charge of first-degree possession of methamphetamine and possession of drug paraphernalia. The charges for giving an officer false identifying information and being a first-degree persistent felony offender were dismissed. Pollard was sentenced to three years, probated for three years. He now appeals the denial of his motion to suppress.

> The exclusionary rule, based upon the Fourth Amendment's prohibition against unreasonable searches and seizures, provides that evidence obtained through an illegal search is not admissible against an accused. The rule extends to the direct as well as to the indirect products of official misconduct. Thus, evidence cannot be admitted against an accused if the evidence is derivative of the original illegality, i.e., is "tainted" or is the proverbial "fruit of the poisonous tree."

*Wilson v. Commonwealth*, 37 S.W.3d 745, 748 (Ky. 2001) (footnotes omitted).

"The standard of review for a trial court's ruling on a suppression motion is two-fold. We review the trial court's factual findings for clear error, and

---

whose identification he or she is seeking that giving a peace officer false identifying information is a criminal offense.

deem [them] conclusive . . . if supported by substantial evidence. The trial court's application of the law to the facts we review de novo." *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011) (footnotes omitted).

We address Pollard's last argument first. Pollard contends that the trial court incorrectly found that he had committed a new and distinct crime by providing Officer D'Aniello with false identifying information. Pollard's argument on appeal is largely a re-argument of the evidence presented at the suppression hearing. It is not our role to re-evaluate the evidence.

> At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court. On review, the appellate court should not reevaluate the evidence or substitute its judgment of the credibility of the witnesses for that of the jury. In conducting our review, our proper role is to review findings of fact only for clear error while giving due deference to the inferences drawn from those facts by the trial judge.

*Neal v. Commonwealth*, 449 S.W.3d 370, 376 (Ky. App. 2014) (internal quotation marks and citations omitted).

The trial court found that Pollard voluntarily provided false identifying information to Officer D'Aniello after being warned that it was an arrestable offense. Having reviewed the record of the suppression hearing, we conclude that substantial evidence supports these factual findings. Thus, they are conclusive.

The trial court determined that "due to . . . providing false identifying information," Pollard committed "a new and distinct crime justifying his subsequent arrest." It also noted that the evidence obtained from the search of Pollard's backpack "after his lawful arrest, . . . was untainted because the new crime was an intervening circumstance that broke the causal chain between the *Terry* frisk and the later discovery of evidence."

In *Kavanaugh*, *supra*, upon which the trial court properly relied, our Supreme Court held that:

> The search of Kavanaugh's person that yielded the cocaine occurred *after* the arrest, not during the *Terry* frisk. Therefore, the contraband was obtained from a valid search incident to a valid arrest. . . .
>
> "[I]f a suspect's response to an illegal stop is a new and distinct crime, . . . any evidence recovered incident to the arrest for the subsequent crime is not tainted by the unlawfulness of the initial detention."

*Kavanaugh*, 427 S.W.3d at 181 (emphasis original) (quoting *United States v. Beauchamp*, 659 F.3d 560, 574 (6th Cir. 2011)).

In the case before us, we conclude that the trial court properly applied the law to the facts as found. Because we may affirm a lower court's decision on any grounds, we need not address any remaining issues. *Luna v. Commonwealth*, 460 S.W.3d 851, 873 (Ky. 2015).

Accordingly, we affirm the denial of the motion to suppress by the Fayette Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky